**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------------x
In re:                                              :        Chapter 11
        Patriot Credit Company LLC, et al., ¹       :        Case No. 22-10333-___
                                                    :        (Jointly Administered)
        Debtors.                                    :
-----------------------------------------------------------------x
```

**MOTION OF THE DEBTORS TO PERMIT EMPLOYMENT OF CFGI**
**PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO PROVIDE THE DEBTORS**
**WITH A CHIEF RESTRUCTURING OFFICER AND RELATED**
**MANAGERIAL SERVICES AND ASSISTANCE NUNC**
**PRO TUNC TO THE PETITION DATE**

The above-captioned Debtors and Debtors in possession (the "Debtors" or the "Company"), by and through their undersigned counsel, hereby submit this motion (the "Motion"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order substantially in the form attached hereto as **Exhibit B** to retain CFGI ("CFGI") to provide the Debtors with the continuing services of Joseph Baum as chief restructuring officer, and related relief. In support of this Motion, the Debtors rely on the declaration of Joseph Baum (the "Declaration"), a copy of which is attached hereto as **Exhibit A** and which will be supplemented prior to final approval of the relief requested herein. In further support of this Motion, the Debtors respectfully state as follows:

**Jurisdiction & Basis**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, as applicable, are as follows: Patriot Credit Company LLC; 1115 Broadway; New York, NY 10010; EIN x4268 and Bluefin Capital Partners, LLC; 1115 Broadway; New York, NY 10010.

3. The statutory predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code and, to the extent applicable, Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

4. These are two entities involved in the financing of certain art-related receivables that are owned by the same parent entity and that largely share liabilities.

5. On April 13, 2022 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

6. The Debtors continue to manage and operate their businesses as Debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

7. Other than the subchapter V trustee, no trustee, examiner or committee has been requested in this Chapter 11 Case.

**Relief Requested**

**8.** By this Application, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 2014, the Debtors seek entry of an order, substantially in the form proposed hereto as Exhibit B, granting authority to employ CFGI for the purpose of allowing Joseph Baum to continue to serve as CRO in this case.

**Basis for Relief Requested**

9. The Debtors believe Mr. Baum has considerable experience in matters of this character and is well qualified to serve the Debtors in this case as CRO based Mr. Baum's expertise individual background.

10. Mr. Baum holds CPA, CIRA, CFE, and CFF certifications and has over 20 years of experience as a senior financial consultant to distressed companies both in and out of court. He has

provided financial management and consultancy services to chapter 11 Debtors across a variety of industries, including financial services, healthcare, gaming and hospitality, and retail.

11. For those reasons, the Debtors retained him to act as a CRO, upon the express approval thereof by the sole member of each Debtors, and Mr. Baum will act under the direction, control and guidance of the same.

12. Accordingly, Mr. Baum has become familiar with the Debtors and this case. The Debtors believe that the continued retention and employment of Mr. Baum will be critical to the Debtors' efforts to maximize the value of their estates for the benefit of creditors.

**Services to be Rendered**

13. Mr. Baum, as CRO will render, among others, the following services to the Debtors (the "Services"):

   a. working with the Debtors and their counsel to fulfill ongoing filing requirements and to prepare a bankruptcy plan and disclosure statement;

   b. working with and overseeing the Debtors' officers and professionals on the compiling and formatting of data and analyses necessary and appropriate for the Chapter 11 Cases;

   c. overseeing and coordinating various activities related to the Chapter 11 Cases;

   d. as appropriate, actively communicating with the Office of the United States Trustee for the District of Delaware and its professionals, the Court, the subchapter V trustee, individual creditors and other parties-in-interest, as appropriate;

   e. executing affidavits and providing testimony in court proceedings as required; and

   f. any and all other activities and/or services that are approved by the Debtors as their directors may from time to time determine appropriate.

**Compensation**

14. Subject to the Court's approval, and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, orders of this Court and guidelines established by the U.S. Trustee, the Debtors request that they be permitted to compensate CFGI as follows:

| Professional | Hourly Rate |
|---|---|
| CRO | $625.00 |
| Director/Managing Director | $475.00 |
| Senior Manager | $375.00 |
| Manager | $300.00 |
| Consultant | $250.00 |

15. The Debtors believe that the overall compensation structure described above is competitive with compensation generally charged by restructuring services firms of similar stature as CFGI for similar engagements, both in and out of court, and is straightforward and economical.

**Conflicts Analysis**

16. Although not directly applicable, Bankruptcy Rule 2014 requires that an application for retention include specific facts showing the necessity for the employment, the name of the firm to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation and, to the best of the applicant's knowledge, all of the firm's connections with the Debtors, creditors, any other party in interest, their

respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee. Fed. R. Bankr. P. 2014.

17. To the best of the Debtors' knowledge, except as otherwise disclosed in the Baum Declaration submitted concurrently herewith, the Applicant has not represented the Debtors, their creditors, equity security holders, or any other parties in interest, or their respective attorneys, in any matter relating to the Debtors or their estates. Further, to the best of the Debtors' knowledge, the Applicant does not hold or represent any interest adverse to the Debtors' estate, is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code, and the Applicant's employment is necessary and in the best interests of the Debtors and their estates.

**Applicable Authority**

18. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Additionally, section 105(a) of the Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

19. This Court should approve the retention and appointment of the CRO, even if outside the ordinary course of business, if the Debtors demonstrate a sound business justification for the transactions. *See, e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Delaware Hudson Ry. Co.*, 124 B.R. 169, 179 (D. Del. 1991).

20. Once the Debtors articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of

the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Groom*, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has vitality in Chapter 11 cases and shields a Debtors' management from judicial second-guessing. *See id.*; *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a Debtors and a presumption of reasonableness attaches to a Debtors' management decisions"). Here, the "sound business justification" test is satisfied.

21. When supported by sound business judgment, bankruptcy courts in this District have authorized the employment by a Debtors of officers pursuant to section 363 of the Bankruptcy Code. *See In re Lehman Bros. Holdings, Inc.*, Ch. 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008) [Docket No. 2278]; *In re PRC, LLC*, Ch. 11 Case No. 08-10238 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008) [Docket No. 182]; *In re Bally Total Fitness of Greater N.Y., Inc.*, Ch. 11 Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug 21, 2007) [Docket No. 283]; *In re Dana Corp.*, Ch. 11 Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) [Docket No. 740]; *In re Penn Traffic Co.*, Ch. 11 Case No. 03-22945 (ASH) (Bankr. S.D.N.Y. July 9, 2003) [Docket No. 260]; *In re Acterna Corp.*, Ch. 11 Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. July 9, 2003) [Docket No. 163]; *In re Worldcomm, Inc.*, Ch. 11 Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Dec. 10, 2002)[Docket No. 2263].

22. Here, the employment of CFGI for the purpose of continuing the employment and retention of Mr. Baum as CRO is a sound exercise of the Debtors' business judgment. Because of Mr. Baum's extensive experience as advisor for troubled companies and familiarity with the Debtors and this case, the Debtors believe that this continued retention will greatly facilitate

the Debtors' reorganization, for the benefit of the Debtors' creditors, shareholders and all parties-in-interest.

23. In view of the foregoing, the Debtors firmly believe that under section 363 of the Bankruptcy Code, the authorization to employ CFGI for the purpose of continuing to employ and retain Mr. Baum as CRO is appropriate and in the best interests of the Debtors and their estates and creditors.

### Notice

24. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the subchapter V trustee; (iii) the DIP Lender; (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002; (v) the United States Attorney's Office for the District of Delaware; and (vi) the Internal Revenue Service.  The Debtors respectfully submit that no further notice of this Motion is required.

### No Prior Request

25. No prior request for the relief sought in this Application has been made to this Court or any other court.

WHEREFORE, based on the facts and disclosures above, the Debtors respectfully request that the Court enter an order in the form proposed hereto as Exhibit B, granting authority to employ CFGI for the purpose of continuing to employ and retain Mr. Baum as CRO, and to provide related assistance and relief.

Dated: April __, 2022

_____
Flight 19, LLC, Debtors' Sole Member
By: Ian Peck

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------------x

In re:                                                   :        Chapter 11
    Patriot Credit Company LLC, *et al.*, [3]        :        Case No. 22-10333-____
                                                 :        (Jointly Administered)
        Debtors.                               :

-----------------------------------------------------------------x

**DECLARATION OF JOSEPH C. BAUM: MOTION OF THE DEBTORS TO PERMIT EMPLOYMENT OF CFGI PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO PROVIDE THE DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND RELATED MANAGERIAL SERVICES AND ASSISTANCE NUNC PRO TUNC TO THE PETITION DATE**

I, JOSEPH C. BAUM, certify under penalty of perjury as follows:

1.      I am a Partner of CFGI ("CFGI"), a financial advisory services firm with offices in New York, New York; Boston, Massachusetts; Philadelphia, Pennsylvania; San Francisco, California; Washington, D.C.; Dallas, Texas; Charlotte, North Carolina; and Stamford, Connecticut. I submit this Declaration on behalf of CFGI, pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in support of the captioned motion. Unless otherwise stated, I have personal knowledge of the facts stated herein.

2.      In the year prior to the commencement of this case, CFGI received $18,000.00 from the Debtors. All was received in the 90 days leading up to the petition date. The Debtors was never behind and $5,000.00 remains post-petition.

3.      CFGI intends to apply for compensation for professional services rendered in connection with this chapter 11 case, subject to approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm. The current standard hourly rates of CFGI's professionals are:

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, as applicable, are as follows: Patriot Credit Company LLC; 1115 Broadway; New York, NY 10010; EIN x4268 and Bluefin Capital Partners, LLC; 1115 Broadway; New York, NY 10010.

| Professional | Hourly Rate |
|---|---|
| Partner/CRO | $625.00 |
| Director/Managing Director | $475.00 |
| Senior Manager | $375.00 |
| Manager | $300.00 |
| Consultant | $250.00 |

The hourly rates set forth above are the standard hourly rates for work of this nature and are subject to periodic adjustment. These rates are set at a level designed to fairly compensate the Firm and to cover fixed and routine overhead expenses. It is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the clients' cases. The expenses charged to clients include, among other things, conference call and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document retrieval charges, photocopying charges, travel expenses, and expenses for "working meals". CFGI will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to CFGI's other clients and in compliance with this Court's rules. CFGI believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.  It is often not possible for CFGI to know the extent to which full time or part time temporary employees will be required when beginning an engagement.

4.      In connection with the Debtors' proposed employment of CFGI, an extensive review (the "Connections Check") of CFGI's clients, adverse parties and related parties (collectively, "Firm Connections") was performed to ascertain whether  CFGI had any "connection" (as such term is used in Bankruptcy Rule 2014(a)) with the Debtors herein, their creditors, any other party in interest herein, or their respective attorneys or accountants, to the extent any such entities were known at such time (the "Case Parties").

-2-

5. CFGI has received a list of the Case Parties, as compiled by the Debtors, attached as Schedule 1 hereto, and has compared this to CGFI's records to determine the existence of any possible conflicts (the "Conflict Check").  The results of this Conflict Check indicate that neither I nor my firm have any conflicts.  With respect to the conflicts check with parent entity, Carlyle and entity affiliate, CVC Fund II, the conflicts checks are ongoing and any conflicts will be disclosed prior to the hearing on this matter. This list was represented by the Debtors to be comprehensive and include the following categories of parties: the Debtors and their affiliates, officers and directors of the Debtors and their affiliates, creditors, equity holders, landlords, professionals, and other parties-in-interest.

**Carlyle**

6. On February 8, 2018, CFGI received an investment from an investment vehicle formed by Carlyle Global Financial Services Partners III, L.P. ("CGFSP III"), an investment fund advised by Carlyle Investment Management L.L.C., each, affiliates of The Carlyle Group (together with its subsidiaries, "Carlyle").  As a result of the transaction, CFGI and CGFSP III are affiliates under applicable law.

7. Carlyle is a global alternative asset manager with more than 1,800 employees in 19 countries over six continents that manages over $260 billion in over 437 active investment vehicles spanning Global Private Equity, Global Credit, and Investment Solutions. Carlyle's Global Private Equity funds, Global Credit funds, and Investment Solutions funds (collectively,  the  "Funds")  are managed independently from each other, and Carlyle maintains an internal information barrier between its Global Credit funds and the rest of the Carlyle funds. CGFSP III, Global Financial Services Partners II, L.P and Global Financial Services Partners, L.P, (collectively, "CGFSP") are Global Private Equity funds that each are owned by a diverse group of limited partners, which exert no control over investment decisions,

and a general partner affiliated with Carlyle. All CGFSP investment professionals involved with CFGI are dedicated solely to CGFSP and are not involved in the Global Credit or Investment Solutions businesses, although, from time to time, one or more CGFSP investment professionals may sit on the investment committee of another Global Private Equity fund. CGFSP makes independent investment decisions from the other Global Private Equity funds, the Global Credit funds, the real estate funds, and the Investment Solutions funds.

8.    CFGI has searched the names of the Debtors and the names of the potential parties in interest provided by the Debtors against: (i) the names of Carlyle's Global Private Equity funds, (ii) the names of Global Credit funds, and (iii) the names of the Investment Solutions funds. CFGI also has searched the name of the Debtors against the public investments of the Global Private Equity funds as set forth in the list most recently provided to CFGI by Carlyle's internal compliance department ("Carlyle Compliance").  We also searched the potential parties in interest list for all Global Private Equity, Global Credit and Investor Solutions funds. The results of that search are discussed further below.  In addition, certain of the Global Credit Funds are managed by third party administrators. We sent email communications to all third-party administrators requesting they report all relationships with the Case Parties. No potential relationships were noted. We will update our disclosures accordingly if we identify any other relationships with any of the Parties in interest.  Given the informational barriers, the conflicts search does not include any portfolio companies of any of the Funds (other than those of CGFSP and the Global Private Equity funds as described above). Based solely on the foregoing search, CFGI has determined, to the best of its knowledge, that there are no connections that require disclosure other than as set forth herein. CFGI operates independently and has no relationships with other portfolio companies, other than its relationship with Carlyle. Because of applicable securities laws and the fact that CFGI and Carlyle operate independently, CFGI was unable to further investigate any potential or actual connections between any portfolio

-4-

companies and the parties in interest. To the extent CFGI learns of any connections involving such entities and/or such investments with the Parties in interest, CFGI will promptly file a supplemental disclosure.

9.      As discussed above, we have undertaken an inquiry of the Case Parties list for all Global Private Equity, Global Credit and Investor Solutions funds. This inquiry does not include any parties who may have been paid by an escrow agent in connection with a fund investment or any parties engaged for business purposes and paid through an employee corporate card.  Other than as specifically noted herein, CFGI has not undertaken to determine the existence, nature and/or full scope of any business relationships or other connections that any Carlyle entity may have with the Debtors and their affiliates or the potential parties in interest in these chapter 11 cases.

10.      Based on, among other things, the business separation between CFGI and Carlyle, CFGI believes that it does not hold or represent an interest adverse to the Debtors with respect to its engagement.  If additional potential parties in interest are made known to CFGI, it will review its connection with such parties and supplement this Affidavit if additional information requiring disclosure is discovered.

**CVC Private Equity Funds**

11.      On November 2, 2021, CFGI received an investment from certain investment funds ("CVC Fund VIII") managed and/or advised by CVC Capital Partners' private equity business ("CVC"). As a result of the transaction, CFGI and CVC Fund VIII are affiliates under applicable law. CVC is a leading private equity firm with a network of 24 offices throughout Europe, Asia and the US, with approximately $122 billion of assets under management. Private equity funds (including CVC Fund VIII, together the "CVC Private Equity Funds") managed and/or advised by CVC are invested in over 95 companies worldwide, which

have combined annual sales of approximately $120 billion and employ more than 500,000 people.

12. CVC Credit Partners and Glendower Capital form part of the wider CVC network, however, are separate businesses to CVC's private equity business. In particular, CVC Private Equity Funds are managed independently from funds (the "CVC Credit Funds") managed by CVC Credit Partners and funds (the "Glendower Funds") managed by Glendower Capital. The investment decisions for investments made by CVC Fund VIII are made by its own general partner, separate to the general partners of the other CVC Private Equity Funds, the CVC Credit Funds and the Glendower Funds. In particular, CVC Credit Partners and Glendower Capital have no involvement in investment decisions relating to CVC Fund VIII's investment in CFGI. CVC also maintains internal information barriers between the CVC Private Equity Funds and its private equity business, on the one hand, and such other funds and their respective businesses, on the other hand. The CVC investment professionals involved with CFGI are not involved in the investment decision making of the CVC Credit Partners or Glendower Capital businesses, however, they may provide assistance to investment professionals working for CVC Credit Partners and Glendower Capital from time to time and/or sit on certain boards or committees related to such businesses (and vice versa). In light of the separate nature of the CVC, CVC Credit Partners and Glendower Capital businesses, no inquiries have been made of or relating to CVC Credit Partners and Glendower Capital, their respective funds or their respective portfolio investments except as described in the following paragraph.

13. CFGI has searched the name of the Debtors and the names of the potential parties in interest provided by the Debtors for references to names of the CVC Private Equity Funds and against the names of portfolio investments of the CVC Private Equity Funds as set forth on CVC's website. Such searches did not return any positive identifications.  Portfolio

investments of the CVC Private Equity Funds, including CFGI, are operated independently of one another therefore CFGI is unable to further investigate any potential or actual connections between any other portfolio companies and the parties in interest. To the extent CFGI learns of any connections involving such entities and/or such investments with the Parties in interest, CFGI will promptly file a supplemental disclosure. CFGI also search the vendor history of CVC FUND VIII, the investor in CFGI.

14.     CFGI, and its affiliates are advisors and crisis managers providing services and advice in many areas, including restructuring and distressed debt.  As part of its diverse practice, CFGI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants, investment bankers and financial consultants, some of whom may represent claimants and parties-in-interest in the Debtors' Chapter 11 case.  Also, CFGI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  In addition, CFGI has in the past, may currently and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtors or the Chapter 11 case. Likewise, certain such professionals who are retained in the Chapter 11 case might have referred work to CFGI.  Based on my current knowledge of the professionals involved, and to the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these relationships constitute interests adverse to the Debtors in matters upon which CFGI is to be employed, and none are in connection with this case.

15.     From time to time, CFGI may have provided services, and CFGI currently and likely in the future will continue to provide services to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to this Chapter 11 case.

As described herein, however, CFGI has undertaken a detailed search to determine, and to disclose, whether it either is providing or has provided services to any significant creditor, equity security holder, insider or other potential party-in-interest in such unrelated matters.

16.     In addition, CFGI has previously appeared, currently appears, and expects to appear in the future in cases unrelated to this Chapter 11 Case before each of the judges of the United States Bankruptcy Court for the District of Delaware and in which the attorneys, professionals and staff of the Office of the United States Trustee may be involved.

17.     It is possible that certain CFGI employees, principals, managing directors, board members, equity holders, or affiliates of any of the foregoing, may own interests in mutual funds or other investment vehicles (including various types of private funds) that own debt, equity securities, or other financial instruments, including bank loans and other obligations, of certain parties-in-interest in this matter.  Typically, the holders of such interests have no control over investment decisions related to such investment funds or financial instruments.  CFGI's policy prohibits its employees from personally trading in its client's securities.

18.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, and except as set forth herein, neither I nor any member of CFGI, nor any principal or professional employee of CFGI have any connection with the Debtors, its creditors, landlords, parties to executory contracts, members, directors, officers, financial institutions, any other party-in-interest, their current respective attorneys, accountants or professionals, the United States Trustee for Region 3 or any person employed in the office of the United States Trustee for Region 3, or are related or connected to any United States Bankruptcy Judge for the District of Delaware or any of the District Judges for the District of Delaware who handle bankruptcy cases, nor do we hold or represent any entity having, an

adverse interest in connection with the Debtors' Chapter 11 case and is a disinterested person, as that term is defined in section 101(14) of the Bankruptcy Code.

19.     To the best of my knowledge after diligent inquiry, neither CFGI, nor any professional associated with or employed by CGFI, has any "connection" (as such term is used in Bankruptcy Rule 2014(a)) with the Debtors herein, its creditors, any other party in interest herein, their respective attorneys or accountants, the United States Trustee, or any person employed in the office of the United States Trustee, except to the extent set forth below. Notwithstanding any "connection" set forth herein, to the best of my knowledge, any "connection" of CGFI to the matched entities is limited to matters unrelated to the Debtors' Chapter 11 Cases. Accordingly, CGFI believes it is a "disinterested person" as defined at Section 101(14)(B) notwithstanding its prior relationship with the Debtors.

20.     CGFI has been involved in a number of unrelated cases with various professionals involved in this case, both in adverse and non-adverse roles.

21.     CFGI has not and will not represent any of the creditors, investors, potential acquirers, parties in interest, attorneys, financial advisors, accountants or any other entity in connection with these Chapter 11 Cases.

22.     CFGI has not, does not, and will not represent any of the Case Parties (or their affiliates) in matters related to the Debtors or their Chapter 11 Cases.

23.     CFGI will file appropriate supplemental disclosure(s) with the Court to the extent that additional information concerning any connections is discovered.

24.     CFGI is not a creditor of the Debtors.

25.     Moreover, CFGI does not hold or represent an adverse interest to the Debtors' estates.

26.     CFGI will act solely as CRO and will not act as a (i) financial advisor retained under Sec. 327, (ii) claims agent/claims administrator appointed pursuant to 28 U.S.C. § 156(c) and any applicable local rules or (iii) investor/acquirer; and upon confirmation of a Plan may only continue to serve in a similar capacity.

27.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated 4/29/22                                      /s/ Joseph C. Baum_____
                                                  Joseph C. Baum

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------x
In re:                                                    :     Chapter 11
      Patriot Credit Company LLC, *et al.*, [4]     :     Case No. 22-10333-___
                                                 :     (Jointly Administered)
      Debtors.                                   :
------------------------------------------------------------------x

**ORDER: MOTION OF THE DEBTORS TO PERMIT EMPLOYMENT OF**
**CFGI PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO PROVIDE THE**
**DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND RELATED**
**MANAGERIAL SERVICES AND ASSISTANCE NUNC**
**PRO TUNC TO THE PETITION DATE**

Upon consideration of the captioned motion (the "Motion") and any response(s) to the

Motion, after due and proper notice of the motion was given and a hearing was held on the

Motion, it is ORDERED that:

1.      The Motion is GRANTED as modified herein.

2.      The Debtors are authorized to retain and engage CFGI to provide the Debtors

with the continuing services of Joseph Baum as chief restructuring officer on the

terms described in the Motion, subject to the following terms, which apply

notwithstanding anything in the Motion or any exhibit(s) related thereto to the

contrary:

(a.)     CFGI and its affiliates shall not act in any other capacity (for example, and

without limitation, as a financial advisor, claims agent/claims

administrator, or investor/acquirer) in connection with the

above-captioned cases.

(b.)     In the event the Debtors seek to have CFGI personnel assume executive

---

[4] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, as applicable, are as follows: Patriot Credit Company LLC; 1115 Broadway; New York, NY 10010; EIN x4268 and Bluefin Capital Partners, LLC; 1115 Broadway; New York, NY 10010.

officer positions that are different than the position(s) disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

(c.)   CFGI shall file with the Court with copies to the United States Trustee ("U.S. Trustee") and all official committees a report of staffing on the engagement for the previous month.  Such report shall include the names and functions filled of the individuals assigned.  All staffing shall be subject to review by the Court in the event an objection is filed.

(d.)   No principal, employee or independent contractor of CFGI and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned cases.

(e.)   CFGI shall file with the Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a monthly basis.  Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred.  Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category.  Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time

-2-

multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed.

(f.)   Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order.   No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

(g.)   The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

(h.)   There shall be no indemnification of CFGI or its affiliates.

(i.)   For a period of three years after the conclusion of the engagement, neither CFGI nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

[Remainder of Page Intentionally Left Blank]

-3-

(j.)     CFGI shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, its/their creditors, or other parties in interest.   The obligation to disclose identified in this subparagraph is a continuing obligation.

**BY THE COURT:**


**The Honorable Craig T Goldblatt**
**United States Bankruptcy Judge**

-4-